■ THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v WILLIAM ROSE, JR., Respondent.—Appeal by the People from an order of the Supreme Court, Queens County (Bianchi, J.), dated August 30, 1985, which granted those branches of the defendant's omnibus motion which were to suppress physical evidence and statements made to law enforcement officers.

Ordered that the order is affirmed.

While on motor patrol with his partner in Queens on March 4, 1985, at approximately 11:00 P.M., Officer Valdes was stopped by a passerby and advised that a black male wearing a long beige coat in which he was secreting a shotgun was going to "knock off" a certain named bar. The officers drove to

the bar but did not see anyone fitting this description outside. They continued patrolling and, several blocks away, spotted the defendant's car making a right-hand turn without signaling. They turned after the car, with their siren on, and advised the defendant, over the patrol car's loudspeaker, to pull over. The officers intended to issue the defendant a summons for the traffic infraction. The car did not pull over immediately, but proceeded at a normal, lawful rate of speed for about four blocks before stopping.

The officers ordered the defendant out of the vehicle and told him to walk to the rear of the car and place his hands on the trunk. When the defendant exited the car, Officer Valdes observed that he matched the passerby's description in that he was a black male and was wearing a long beige coat. The officer patted down the defendant's clothing while the defendant had his hands placed on the vehicle's trunk but found no weapon. The defendant's car then began to roll and the officer jumped into the car in order to stop it. The officer then got out of the car and requested and obtained the defendant's license and registration which appeared proper. He did not advise the defendant that he fit the description of a suspect, nor did he inquire about the reported incident. At this point, several back-up units arrived. Officer Valdes remarked to one of the newly arrived officers that the defendant fit the description given by the passerby. The officers walked back to the car, which had been left open when Valdes stopped the car from rolling, stood by the open car door and shone a flashlight into the interior. The light revealed a gun on the floor under the driver's seat.

The defendant was arrested on a weapons charge and was issued a traffic summons. En route to the police station, the defendant was given his *Miranda* warnings, but the officer could not remember what response, if any, he received. At the station house, the defendant allegedly remarked that the gun had not been fired in 2 or 4 years and that he had brought the gun back from Viet Nam.

The hearing court ruled that the police acted unlawfully in seizing the gun and lacked probable cause for the arrest. Therefore, both the gun and subsequent statements were suppressed. We agree with the court's conclusions.

The defendant was stopped for an alleged traffic infraction and was properly ordered out of his automobile *(see, Pennsylvania v Mimms,* 434 US 106). Since he fit the description given by the passerby of an armed man, the police were

justified in patting him down to check for a weapon *(see, People v Russ,* 61 NY2d 693). However, in light of the vague description given, that of a black man with a long beige coat, a description which could have fit a large percentage of the population, and the defendant's subsequent conduct, the police action in shining the flashlight into the vehicle was unreasonable.

The defendant had already gotten out of his automobile and was apparently standing away from it when the officer shone the flashlight into the car. He had been frisked and was found to be unarmed. Additionally, no questions were asked of the defendant in connection with the robbery. He was cooperative with the officers and turned over his license and registration when asked to do so. At this point, the defendant should have been issued the traffic summons and allowed to leave. No articulable facts were present to justify the police action in continuing to hold the defendant and in returning to the car to shine the flashlight inside *(see, People v Russ,* 61 NY2d 693, *supra; People v Smith,* 42 NY2d 961).

We also reject the People's argument that the gun was properly seized because it was in plain view. It has consistently been held that plain view *alone* will never justify a warrantless search and that the discovery of the object must have been inadvertent and not planned or anticipated by the authorities *(Coolidge v New Hampshire,* 403 US 443, *reh denied* 404 US 874; *People v Jackson,* 41 NY2d 146). Here, the discovery of the gun was anything but inadvertent. The officer went back to the car after noting that the defendant fit the description given by the citizen and shone the light in the car, undoubtedly in search of the shotgun.

Accordingly, we find that the police conduct was unreasonable in light of the circumstances. Therefore, the court properly suppressed the gun and the subsequent statements made after the arrest without probable cause. Lazer, J. P., Mangano, Lawrence and Kooper, JJ., concur.